CRAIG H. MISSAKIAN (CABN 125202)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, CA 94612
Telephone: (510) 637-3680
Fax: (510) 637-3724
E-Mail: jonah.ross@usdoj.gov

Attorneys for United States of America

**FILED**
Sep 15 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:25-CR-00266 JST |
| Plaintiff, | **GOVERNMENT'S DETENTION MEMORANDUM** |
| v. | |
| NATHANIEL PORTER, | |
| Defendant. | |

## I. INTRODUCTION

Despite a prior felony firearm conviction, Nathaniel Porter continues to possess loaded pistols with high-capacity magazines, including one that was modified to fire as a fully automatic machine gun. And despite pending charges for over a dozen burglaries, Porter has continued to commit more crimes, including additional burglaries and the firearm possession for which he has been indicted.

After learning that federal agents were attempting to arrest him on a federal warrant, Porter moved out of his apartment, shut off his phone, and failed to appear at his Alameda County court appearance. Because Porter's conduct proves that, if released, he will continue to commit crimes and will flee from prosecution, it is imperative that he remain detained pending trial.

## II. BACKGROUND

### a. Possession of Firearms

#### 1. Porter Has Been Indicted for Possessing a Firearm as a Felon on March 7, 2025

Around 2:00 a.m. on March 7, 2025, officers with the Oakland Police Department responded to a report of a burglary at a restaurant. When the officers arrived, they observed Porter and approximately 10 other suspects fleeing the restaurant. Despite officers' commands to stop, Porter fled on foot while carrying a black pistol in his hand. The officers eventually caught Porter after he tried and failed to scale a fence in an alleyway. The officers observed a Glock pistol with an extended magazine on the ground next to Porter:

GOVERNMENT DETENTION MEMO
4:25-CR-266 JST                                                      1



The semi-automatic Glock pistol was loaded with 20 rounds of ammunition.

**2.     May 30, 2024:  Porter Possessed a Glock Pistol with an Extended Magazine and a Machine Gun Conversion Device**

As part of an investigation into Porter's involvement in over a dozen burglaries in Alameda County, on May 30, 2024, the United States Marshals Service executed a state search warrant at Porter's apartment in Oakland.  (Porter was ultimately charged with 14 of these burglaries.)  Porter exited the residence after a brief delay.  Porter's girlfriend and their young child were also present.  When law enforcement officers searched the apartment, they found in the toilet tank a loaded Glock pistol equipped with an extended magazine:

/ / /

/ / /

/ / /

/ / /

/ / /



The pistol—which was loaded with a round in the chamber—was modified with an aftermarket "autosear" device, converting the semi-automatic pistol to a fully-automatic machinegun. These conversion devices allow a pistol to fire approximately 20 rounds per second with a single pull of the trigger.[1] Officers also located a box of .45 caliber TulAmmo brand ammunition and clothing that appeared identical to clothing Porter wore during the burglaries for which he was being investigated.

### b.   Porter Currently Faces At Least 15 Burglary Charges and Multiple Gun Charges in Alameda County

After his participation in over a dozen burglaries in various cities in Alameda County, Porter now faces at least 15 burglary charges and two felon-in-possession charges (including one for the possession for which he has been indicted federally). According to police reports, Porter committed these burglaries as part of an organized crew. And after he was charged with multiple burglaries following his arrest on May 30, 2024, the pending charges did not deter Porter from committing more felonies. On March 7, 2025, he was arrested in the instant case after burglarizing yet another business in Alameda County while possessing a loaded Glock pistol with an extended magazine.

---

[1] For a demonstration of how machine gun conversion devices work, see https://www.youtube.com/watch?v=Tmyk9qm3wkQ.

But even that was not enough to deter Porter from further criminal conduct. On May 21, 2025, Porter was arrested yet again after burglarizing a vehicle in Southern California.

### c. After Learning that a Warrant Had Issued for His Arrest, Porter Abandoned His Apartment and Failed to Appear at His Alameda County Court Appearance

After a federal arrest warrant issued for Porter, on September 3, 2025, federal agents attempted to arrest Porter at his apartment in Oakland. Porter was not present at the apartment, and Porter's girlfriend informed Porter that he had left the night before. The agents also met with Porter's mother, who indicated she would speak with Porter and attempt to convince him to surrender to law enforcement.

Despite having lived at that apartment for well over a year, Porter and his girlfriend abandoned the apartment within days, and Porter shut off his phone, presumably to avoid being tracked. Federal agents eventually located Porter and his girlfriend at a hotel in Dublin, CA. On September 11, 2025, federal agents arrested Porter in Berkeley, CA. Porter had missed his court appearance in Alameda County that morning, and a bench warrant issued for his arrest.

### d. Porter Has Previously Been Convicted of Carrying a Concealed Weapon

In addition to serious juvenile adjudications, in 2023, Porter was convicted of carrying a concealed weapon, a felony. The original termination date for this conviction was March 16, 2025—indicating he was likely on probation when he committed the instant offense. (The government has not yet confirmed if his probation terminated before the original date.)

## III. LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a

flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV. PORTER'S CONTINUOUS CRIMINAL CONDUCT PROVES THAT HE IS A DANGER TO THE COMMUNITY

The United States submits that no condition or combination of conditions will protect the public should he be released from custody.

### a. The Nature and Circumstances of the Offense and the Danger to the Community Weigh in Favor of Detention

Porter's repeated possession of loaded Glock pistols with high-capacity magazines, including one modified to fire fully-automatically, makes clear the danger he poses to the community. Despite his prior repeated arrests and convictions (including a felony conviction), the restrictions imposed by the terms of his probation, and the charges pending against him, Porter nonetheless continued to acquire and possess firearms and to use them to commit other crimes.

The nature and circumstances of the offense leave little doubt that, if released from custody, Porter will continue to acquire firearms and ammunition and commit other felonies. And given his history of carrying a firearm during burglaries, his release could have violent consequences.

### b. The Weight of the Evidence Against Porter Is Overwhelming

The evidence against Porter is overwhelming. Porter was observed by officers with a black pistol in his hand, fled after he was ordered to surrender, and then was detained with a black pistol at his feet when he was alone in an alleyway.

### c. Porter's Criminal History and Prior Conduct Demonstrate the Danger He Poses

Porter's repeated criminal conduct demonstrates the danger he poses to the community and should give the Court no reason to believe that he intends to comply with any court orders. Despite the restrictions of probation and the prospect of sentencing on his several open cases, he has continued to commit crimes by acquiring firearms and ammunition. He is a danger to the public at large. Porter has already been convicted of a felony gun crime, but, as his conduct in the instant case proves, the prospect of prison time does not deter Porter from committing crimes and acquiring highly dangerous firearms.

## V. PORTER'S CONDUCT AFTER LEARNING OF HIS FEDERAL ARREST WARRANT PROVES THAT HE IS A FLIGHT RISK

Porter's recent conduct after learning of his federal arrest warrant should give the Court every reason to believe that, if he is released from custody, he will not return. After agents informed both Porter's girlfriend and his mother (who told federal agents she would advise Porter of the arrest warrant) that a federal warrant had issued for his arrest, Porter shut off his phone (presumably to avoid capture); abandoned the apartment he, his girlfriend, and their child had been living in for over a year; and moved to a hotel in Dublin. And further, prior to his arrest in Berkeley on September 11, 2025, Porter had missed his court appearance in Alameda County, and a bench warrant issued for his arrest.

The prospect of federal prosecution caused Porter to take these actions—including failing to appear in court—to avoid capture. He presents a clear flight risk.

## VI. CONCLUSION

For the reasons set forth above, Porter is a danger to the community and a flight risk. The Court should therefore detain Porter pending trial.

DATED: September 15, 2025                     Respectfully submitted,

                                              CRAIG H. MISSAKIAN
                                              Acting United States Attorney

                                              /s/ Jonah P. Ross
                                              JONAH P. ROSS
                                              Assistant United States Attorney